**RODOLF v. BOARD OF COM'RS OF TULSA COUNTY et al.**

No. 17523—Opinion Filed Dec. 21, 1926.

(Syllabus.)

1. **Statutes—Local or Special Laws—Procedure for Enactment.**

Section 32, art. 5, of the Constitution is:

"No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State."

This is an inhibition against the Legislature. The inhibition goes to the extent of preventing the Legislature entertaining or giving heed to any such local or special bill until notice of the intended introduction of the bill is published for four consecutive weeks and such time has elapsed, and verified proof thereof filed with the Secretary of State. The said inhibition is not lifted until the same is done.

2. **Same—Invalidity of Local Act Introduced Before Due Publication.**

A special or local bill is not before the Legislature for any permissible action thereon until the requirements of said section 32, article 5, are complied with. In the instant case the publication relied on was made for the first time on February 11, 1925, and three times thereafter. The period of notice did not expire until March 11, 1925. The bill was presented (or an attempt at introduction thereof was made) on February 11, 1925. It was placed on first, second, and third readings, and on final passage March 9, 1925, when the enrolled bill was signed by the Speaker of the House. It was passed by the Senate March 12, 1925. Held, that such attempted enactment of the bill did not give the same the force and effect of law.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by F. M. Rodolf against the Board of Commissioners of Tulsa County et al. Judgment for defendants, and plaintiff brings error. Reversed.

Biddison & Ladner and V. H. Biddison, for plaintiff in error.

Byron Kirkpatrick, James Harrington, Philip J. Kramer, and R. P. Colley, for defendants in error.

BRANSON, V. C. J. Herein is presented error from the district court of Tulsa county.

On the 15th day of May, 1926, plaintiff filed his petition in the said court against the board of county commissioners of Tulsa county, consisting of J. S. Shaver, W. L. North, Ed W. Hedgcock, and also the same individuals as the county market commission, and the excise board of Tulsa county, consisting of John L. Smiley, as county treasurer; O. G. Weaver, as county clerk; John P. Boyd, as county judge; A. G. Bowles, as county superintendent of public instruction, and Byron Kirkpatrick, as county attorney. The parties appear here as in the court below. The petition is voluminous. It pleads in substance that the plaintiff is a resident citizen and taxpayer of the county of Tulsa, and that this action is brought in his own behalf and on behalf of the other taxpayers of Tulsa county, Okla. It pleads that the biennial session of the Legislature of Oklahoma of 1925 enacted into the form of law what is referred to as House Bill No. 239, chapter 158, Session Laws of 1925; that the defendants, and each of them, had caused to be levied, as by said bill provided, certain moneys for a county market as described in said action, and that said moneys, or a considerable portion thereof, had been collected; that steps had been taken by certain of the defendants, as by said House Bill No. 239 provided, for the purpose of a site, and that the defendants and each of

them were seeking to carry out the same, both by making the contracts for the erection of a county market, and the expenditure of public funds therefor, as well as the levy of additional taxes for such purposes, all of which acts done and intended to be done by the defendants, plaintiff pleads, were and are in fact without authority of law, and there is no adequate remedy except injunction.

Many reasons are pleaded why the said acts of the defendants theretofore done, and their intended acts under the provisions of said House Bill No. 239, were and would be illegal and without authority of law.

The petition charges that the said act is a special or local law, and that the attempted enactment thereof by the Legislature, as was done, violated the inhibition of the Constitution of the state. The particular part of the Constitution to which plaintiff here refers is section 32, art. 5.

Plaintiff pleads this section in the language as it is found in the Constitution. It is as follows:

"No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State."

Plaintiff further pleads the notice. The same is in words and figures as follows, to wit:

"Notice is hereby given that the undersigned members of the 10th Legislative Assembly of the state of Oklahoma, will introduce in the Legislature now in session a bill, entitled 'An Act creating a market commission in Tulsa county, Oklahoma.' Empowering said commission to accept by lease from the city of Tulsa a site and grounds and to erect thereon a market house and storage. Authorizing said commission to establish assembling houses at various places in said county. Authorizing said commission to erect a market house and storage and assembling houses. Provided the revenue for paying the cost of such buildings and empowering the excise board of said county to levy not in excess of two-tenths of a mill for paying annual installments of expenditures authorized by this act. Providing for disposition and use of revenue derived from authorized charges for services to the public for the use of such market place, storage and assembling houses; and authorizing employment of market master and employees and fixing their compensation. Authorizing said commission to incur necessary expenses in operating such market house, market place, storage and assembling houses and providing for the payment of the same. Empowering said commission to adopt rules and regulations for the management of such market house, storage and assembling houses, and to fix and levy charges for space, storage, and privileges and service to the public. And providing for the installation of a system of accounting. And repealing acts and parts of acts in conflict with this act.'" (Signed by several members of the Legislature.)

To the said notice is attached the affidavit of one K. D. Swartz, as the accountant of the Tulsa Tribune Company, a corporation, and the publisher of the Tulsa Tribune, a daily newspaper published in the city of Tulsa for more than one year next before the publication of the said notice, and that the said paper has a general circulation in Tulsa county and that said notice was published in said paper on the following days: February 11, February 18, February 25, and March 4, 1925, which affidavit was made on the 4th day of March, 1925. The said proof of the said publication of notice of intended introduction of said bill was filed in the office of the Secretary of State of the state of Oklahoma on March 5, 1925.

Plaintiff further pleads that said act is also void and without any legal force and effect as violative of subdivision "b" of section 46, art. 5, of the Constitution, and subdivision "m" of said section 46, art. 5; that the enactment of legislation of this character is prevented by section 59 of art. 5 of the Constitution; that the said act is in conflict with, and prohibited by section 20 of art. 10 of the Constitution. These sections declare what cannot be done by special or local enactments.

Further, plaintiff alleges that the contracts for the location and erection of said market, contemplated by the said bill, and about to be entered into by the defendants, the board of county commissioners, as the market commission, would create an indebtedness in violation of section 26, art. 10, of the Constitution.

The prayer of plaintiff's petition is, in substance, that the defendants and each of them and their successors in office be enjoined from entering into any contract for the construction of such market or further expending any money or the levy of any tax, or the approval of any budget as contemplated by the said act.

The defendants answered and admitted that they were officers as alleged in plaintiff's petition, but further, a general denial. On the trial of the cause, judgment was entered against the plaint.ff. We deem it expeditious to consider the first contention pleaded.

We call the reader's attention to the section 32, art. 5, of the Constitution, as quoted above. There are many sections of the organic law of the state which are in their nature inhibitions against the passage of special or local laws. Section 46, art. 5, is such an inhibition. Section 20, art. 10, is an inhibition against the Legislature as to the imposition of taxes except by general enactment. Section 59, art. 5, ·provides, in effect, that the laws of a general nature shall have universal operation. throughout the state, and where such a law can be made applicable, no special law shall be enacted.

Again we recur to the said section 32, art. 5, as quoted. This is clearly an inhibition. The inhibition is against the Legislature. Stress is laid by counsel for defendants on an interpretation of that part thereof which is "No special or local law shall be considered." The position of the defendants apparently is that the notice of the intended introduction of the bill was actually published in substantial compliance with the requirements of said section before the bill was passed by either house, and therefore the inhibition contained in the section against the Legislature passing such a local law was lifted.

As stated, supra, stress is laid upon that part using the term "considered," and the argument proceeds along the line that the idea conveyed by said word is that the bill shall not be brought up for debate on the floor of either branch of the Legislature or for a discussion of the wisdom or lack of wisdom of such proposed bill until publ'shed as therein provided. No authority is cited by the defendants in support of such a construction, and we must say whether or not an analysis of this section will permit such an interpretation. This section must be held to have a mandatory inhibition contained in it, or the section is useful solely as occupying space in the Constitution of this state. It is by parity of reasoning similar to the purpose of a title to a bill as discussed in State ex rel, Short v. Johnson, 90 Okla. 21, 215 Pac. 945, where we said in part:

"In states which do not have the initiative and referendum and where the power is not reserved to the the people to reject legislative acts, states which provide merely

that the subject of an act shall be 'expressed in the title,' not 'clearly expressed in the title,' as provided in our Constitution, it has been held that the purpose of such provision is to give notice, not only to the legislative body, but to the public also, in order that they might petition or protest to the Legislature against such an act. Besides, it has been held in most states that such provisions are mandatory. 25 R. C. L. sec. 87, p. 840. And it occurs to us that if they are not mandatory, then they are utterly useless and have no purpose in our Constitution."

The result of defendants' argument as to what is meant by "considered" is that this section of the Constitution means, in effect, that the notice required to be published for four consecutive weeks is a notice of the intended consideration of a proposed bill.

Acting under well-recognized rules of constitutional and statutory construction, it is legitimate to transpose the phraseology in order to make clear the intent. So transposed, let it be read:

"Until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper, published or of general circulation in the city or county affected by such law stating in substance the contents thereof and verified proof of such publication filed with the Secretary of State, no special or local law shall be considered by the Legislature."

All constitutional and statutory provisions relative to the enactment of legislation by sovereign legislative bodies and all rules of parliamentary practices carry with them the assumption that nothing in the form of law shall be enacted without both consideration and deliberation. There is no provision in the Constitution of this state directing that any bill shall be submitted for debate or discussion by either branch of the Legislature before the roll is called on final passage; but the framers of the Constitution recognized that it is an inherent principle observed by all deliberative bodies that proposed measures shall not receive the formal sanction of such bodies without a reasonable opportunity for discussion of the wisdom or lack of wisdom of the proposed measure. The word "considered," as found in this section, does not have reference to this universal presumption, but the word "considered," as used herein, carries the idea of "entertained" or "given· heed." Section 34 of article 5 of the Constitution requires that a bill shall be placed upon three separate and distinct readings, each on separate days, before final passage. When a member of the Legislature introduces a bill, it is placed on

first reading. From that moment until it is finally approved and signed by the presiding officer. or until the bill is otherwise disposed of, it is under consideration by the Legislature. The members thereof are put upon notice, by the first reading of the bill, that they must consider its wisdom or lack of wisdom, and we are not unaware of the fact that upon the introduction and reading of many bills, ardent advocates thereof, or opponents thereto. forthwith begin preparation of their arguments to present when the question is before the body for debate.

In further analyzing the said section, we must ask ourselves the question, Notice of what is required to be published for four consecutive weeks and verified proof filed with the Secretary of State? The section answers this question in this language: "Notice of the intended introduction of such bill or bills." Therefore, we find that the section means that until notice of the intended introduction of a local or special law shall have been published, as by said section provided, and proof filed with the Secretary of State, and the four weeks have elapsed, an inhibition runs against the introduction of the bill in the Legislature, and further the inhibition is to the effect that the Legislature shall not entertain or take heed of the same. This is further made clear if proper stress is placed upon the words "intended introduction." The word "intended" has a clear meaning of something that is to take place in the future. Notice of the intended introduction of the special bill required to be published for four consecutive weeks carries with it the clear import that at the expiration of the running of the time. the persons who give the notice will carry out their intention, to wit, introduce a bill along the line set out in the publication.

We therefore must conclude the section is an inhibition against the Legislature entertaining, or giving heed to, any such bill until the notice of the intended introduction of the bill is published for four consecutive weeks, and such time has run; second, proof thereof is filed with the Secretary of State.

The defendants, apparently taking the position that it supports their contention, cite a case from the Supreme Court of Alabama. While the language is not the same, the purpose of the constitutional provision of Alabama is identical with that of the Oklahoma Constitution now under consideration.

The opinion is in the case of State ex rel. Clark v. Carter (Ala.) 56 South. 975, and defendants in error quote as follows:

"An affidavit of publication of notice of intention to apply for the passage of a local law which recites that the notice was published in a newspaper once a week for four consecutive weeks ending March 20, 1910, shows that the publication was had during a period of four consecutive weeks, and is sufficient within Const. 1901, sec. 106, to justify the passage of the local law, **the bill for which was introduced in the Legislature on March 22.**"

It will be noticed from this quotation. found in the brief of the defendants, that the affidavit was of the **intention** to apply for the passage of a local law and that the time expired on the 20th day of March. The decision holds that a bill introduced on the 22nd of March was justified under this publication.

Looking to the Constitution of Oklahoma, it says "until notice of the intended introduction of such bill shall be published for four consecutive weeks." Thus it is clear that a bill cannot be introduced which is of a special or local character until the prerequisites above set out have been complied with. It may not be considered amiss in the light of the numerous inhibitions of the Oklahoma Constitution against the passage of special or local laws to state that such enactments are not favored by the Constitution. If passed at all, they must be introduced after the period of notice has run and proof of notice filed with the Secretary of State. As we view it, it was not foreign to the intention of the framers of the Constitution that when a member of the Legislature sought to introduce a special or local law, he should first present to the Legislature proof of publication of notice as required by section 32, article 5, supra, and proof that the same had been filed with the Secretary of State; and that this should be made a part of the record of the Legislature, and when that was done, it then became in order for the first time to introduce the bill. This procedure certainly would obviate the time taken by the Legislature on local and special laws where this constitutional provision has not been complied with. Cadman v. Smith, 15 Okla. 633, 85 Pac. 346; Smith v. Bostapah, 103 Okla. 258, 229 Pac. 1039; Sitton v. Hernstadt, 106 Okla. 140, 233 Pac. 676.

Applying these rules to the instant case, we find from the record that the first publication of the notice was made on February 11th. The period of notice would not run until March 11th. On February 11th the bill was introduced in the House of Representatives. We find that proof of this notice was not filed with the Secretary of

State until March 5, 1925. That the bill was actually passed on March 9th by the lower house and signed in open session by the speaker, and that this action was before the expiration of four consecutive weeks from the date of the first publication, to wit, the 11th day of February. The defendants say that the intent of such constitutional provision is to give persons interested an opportunity to be heard before the legislative body. Without deciding that this is the sole purpose, the persons interested would certainly have had a right to be heard after the publication had run for four consecutive weeks or after the expiration of 28 days from the first publication.

Had they so desired to be heard, they would have found that the bill had already been passed by the House of Representatives on final roll call and delivered to the Senate on March 9th, where it was forthwith enacted, and approved by the Governor on the 13th day of March, 1925.

We reach the conclusion that the inhibition of section 32, article 5, was never lifted, but was in full force and effect against the enactment of this bill in the manner the record discloses it to have been enacted. It therefore cannot be given the force and effect of law.

While it is true, as suggested by defendants, that Session Acts 1915, chapter 107, modified section 420, C. O. S. 1921, it did so only to the extent of requiring the individual taxpayer to pay his tax alleged to be illegal, and then by suit to recover same. The bill in the instant case seeks to prevent the unlawful expenditure of public funds, and the making of contracts to incur a public indebtedness without sanction of law. The power of injunction to prevent such has not been taken away by the said act, supra.

We deem it unnecessary to discuss the numerous other contentions made against the bill. The judgment of the trial court is reversed, with directions to enter judgment as prayed.

NICHOLSON, C. J., and MASON, PHELPS, LESTER, CLARK, and RILEY, JJ., concur.