## SCHOOL DIST. No. 85, KAY COUNTY, v. SCHOOL DIST. No. 71, KAY COUNTY.

No. 17734. Opinion Filed Nov. 27, 1928.

H. S. Braucht, for plaintiff in error.

F. C. Duval, R. O. Wilson, and O. S. Ellifrit, for defendant in error.

RILEY, J. A question here presented is whether recovery by a school district of "transfer fees" for instruction given is dependent upon the existence of an item being in the estimate made and approved of the school district sought to be charged. Involved also is whether an excise board may arbitrarily make an appropriation for transfer fees for a school district.

Presented here are two causes of action. As applied to the first, there was at no time an item, estimate, appropriation, or provision for paying the transfer charge; as applied to the second, the excise board of Kay county of its own volition, without suggestion or approval on the part of either school district affected thereby, inserted an item in the estimated needs of school dis-

trict No. 85, for the fiscal year ending Jan. 30, 1924, for "transfer fees," which item so inserted increased the total amount of the estimated needs of that school district. There was no advertisement by the excise board of the increased estimate so made and approved as required by section 9698, C. O. S. 1921. C., R. I. & P. Ry. Co. v. Pourron, 118 Okla. 80, 246 Pac. 835.

It appears that school district No. 85 considered minutely its financial budget and each item of its estimated needs, and at its annual meeting on March 28, 1922, it voted exactly four mills additional levy over the base levy of five mills provided by statute. No item was made that year for transfer fees, either by the school board or the excise board.

Concerning the second cause of action, at the annual meeting of district No. 85, on March 27, 1923, the district considered its itemized requirements and authorized an additional levy of exactly five mills over and above the five-mills base levy provided by law for school purposes. At that meeting the district considered and rejected a proposed item for transfer fees and definitely refused to authorize any item of the appropriation in any amount for transfer fees. The appellant school district contends that the item for transfer fees subsequently inserted in the estimate made and approved by the excise board for the fiscal year ending June 30, 1924, was unauthorized, illegal, null and void, contrary to and subversive of the rights of the taxpayers of school district No. 85, Kay county, and violative of the provisions of the Constitution of this state. It contends that no funds were legally provided by the tax levy or otherwise to pay the alleged claims.

Contracting the statement of facts, we may say that the school district sought to be charged has in every manner affirmatively and definitely declined to make provision or to pay transfer fees, whereas the county excise board has by its act sought to make provision for the school district to pay these charges included in the second cause of action, and the trial court, by its judgment, has directed payment therefor to be made in both causes of action.

We may well consider what is commonly called the transfer law; it is contained in article 20, chapter 86, the same being sections 10591 to 10610. C. O. S. 1921. The particular section directly applicable here is section 10606, which in the use of words makes it the duty of the school boards from which transfers are made to include in their annual estimate a transfer item. The statute is as follows:

"It shall be the duty of the school boards from which transfers have been made, in compliance with this act, to include in their annual estimate the amount for transfer fund as shown by statement referred to in section 5 of this act."

The school board of district No. 85 obeyed the will of the school district expressed by the records of the annual meeting, rather than the appellees' interpretation of the statute.

If we consider the provisions of section 10606, supra, mandatory, then the school board failed to perform its duty. If we consider the provisions of the statute directory, the school board elected not to be governed thereby, but, on the other hand, to be directed by the will of the school district as expressed by the minutes of the annual meeting, and section 10339, C. O. S. 1921, which section provides in part:

"Following the annual school meeting and on the first Tuesday in July, it shall be the duty of the school district board to meet and make out the report required by law to be filed with the excise board showing the fiscal condition of the school district at the close of the previous fiscal year and the statement of the estimated needs thereof for the current or ensuing fiscal year."

As to powers of the assemblage at the annual meeting, see section 10342, C. O. S. 1921, and Tilley v. Overton, 29 Okla. 292, 116 Pac. 945.

In Palmer v. Yale Consolidated School, 115 Okla. 70, 241 Pac. 495, we are afforded a helpful and sound decision. There a transfer was made, but the Yale consolidated school refused to receive the pupil for the reason that no levy had been made by the transferring school district and because instruction ought not to be given the "transferred" without compensation. The excise board was made a party defendant, and mandamus was sought to compel the levy to be made by that board. The excise board, in conjunction with the transferring district No. 1, showed requested transfers amounting to $1,700, and a levy of 15 mills required and voted in district No. 1 for estimated needs. exclusive of transfer items. This court there held to three basic principles: (1) The school district was not authorized to cause a tax levy to be made in any one year for school purposes in a sum greater than a 15-mill levy by reason of the restriction contained in section 9, art. 10,

Constitution. (2) The right of transfer was dependent upon an estimate made and approved therefor. (3) That school district No. 1 and the excise board were justified, "in the exercise of their judgment," in eliminating the item estimated for transfer fees so as to reduce the estimated needs to 15 mills, and that it was within the exercise of discretion to eliminate wholly the item for transfer fees, rather than to include such item and reduce the other estimated needs.

See, also, School Dist. No. 61, Payne County, v. Consolidated District No. 2, Logan County, 110 Okla. 263, 237 Pac. 1110, as to the provisions of section 10602, C. O. S. 1921, concerning notice of application for transfer being directory rather than mandatory.

The Palmer Case, supra, is decisive of the issue here presented in the first cause of action, for there was no estimate made and approved, nor levy made to pay that claim alleged. Since a recovery for the transfer fees is dependent upon an appropriation therefor, and since there was no such item contained in the estimate made and approved for the fiscal year 1923, the first cause of action must fail. There can be no quantum meruit recovery. The lack of power to contract such indebtedness bars every form of action and every legal device by which recovery is sought. Fairbanks-Morse Co. v. Geary, 59 Okla. 22, 157 Pac. 720. The structural base of municipal finance, for current indebtedness, is the pay as you go plan.

Appellee seeks aid and comfort under a theory that when a transfer is made by the county superintendent, then the transfer fees, based upon a per capita cost of instruction, is saddled upon the district from which the transfer is made, as an involuntary obligation imposed by statute.

Transfer fees cannot be classed as involuntary obligations, for those obligations classified as involuntary ought to be and are restricted to liabilities necessary for the maintenance of government and its functions (including protection of life and property, and conservation of public health and safety). Assuming without deciding that there may be added that function and object of government, to wit, the maintenance of a public school system, even then transfer payments are not essential to that object of state government, for such items are destructive to the weak schools even though an aid to the strong schools.

Section 26, art. 10, of the Constitution provides in part:

"No county, city, town, township, school district or other political corporation or subdivision of the state shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any one year the income and revenue provided for such year, without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose."

For the reason heretofore recited, this case is not comparable to Smartt v. Board of Com'rs of Craig County, 67 Okla. 144, 169 Pac. 1101. The claim in the first cause of action is not based upon an involuntary obligation and cannot be allowed by reason of the lack of an estimate made and approved to warrant the claim, as inhibited by section 8638, C. O. S. 1921.

We now approach the question involved in the second cause of action—Can an excise board arbitrarily create an item in the estimate of a school district for transfer fees? Section 10607, supra, so provides. However, the item so inserted in the estimated needs of the school district for the fiscal year ending June 30, 1924, was noneffective and void for the reason the same increased the estimate made and because it was not advertised as required by section 9698, C. O. S. 1921. C., R. I. & P. Ry. Co. v. Pourron, supra.

We observe that counsel for appellee, in discussing the Pourron Case, supra, say that case is not in point, for there the excise board was proceeding under the general statute, which in effect admits that the transfer law here considered is a special statute. We cannot but conclude that the general law was applicable relative to the duty of making the estimate of the needs of the school district, including transfer items, together with all other items of the estimate. The general law contemplated that the district was the body from whence should come the estimate made, and as applied to other items of the estimate made, it has never been found necessary to provide by statute that in the event the district failed to include an item, some outside approving or regulating board should do so. The excise board's duty is to exercise its prerogatives in adjustment of the estimate made, if necessary, and to approve the same, whereupon the same becomes the estimate made and approved.

Section 10607, supra, is violative of the Constitution, art. 5, sec. 59:

"Laws of general nature shall have a uniform operation throughout the state, and

where a general law can be made applicable, no special law shall be enacted."

Likewise, section 10607, supra, is violative of art. 10, sec. 20, of the Constitution, which provides:

"The Legislature shall not impose taxes for the purpose of any county, city or town or other municipal corporation, but may by general laws confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

The act under consideration provides for an imposition of a tax by the Legislature upon a school district through an adopted agent, the excise board, which is not the "proper authority thereof" to make the estimate, but only the readjusting and approving board.

In Montgomery v. Commonwealth, 91 Pa. 125, there was considered a statute which required school directors to assess and levy a tax for one specific purpose, which could not be used for any other purpose. The statute was held to be a special act and void.

Special laws are those made for individual cases, or for less than a class requiring laws to its peculiar conditions and circumstances. Vermont L. & T. Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; Guthrie Daily Leader v. Cameron, 3 Okla. 677, 41 Pac. 635; Maxwell v. Tillamook Co., 20 Ore. 495, 26 Pac. 803; Healy v. Dualey (N. Y.) 5 Laws, 115; 1 Bl. Comm. 186.

"A special act is one which operates merely on one particular thing, or on a particular class of things existing at the time of its passage." City of Topeka v. Gillett, 32 Kan. 431, 4 Pac. 800; State v. Hunter, 38 Kan. 578, 17 Pac. 177; Dundee Mtge. & T. Inv. Co. v. Sch. Dist. (U. S.) 21 Fed. 151.

"* * * Local or special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class to which they are naturally related; they create preferences and establish inequalities; they apply to persons, things, or places possessed of certain qualities or situations, and exclude from their effect other persons, things, or places which are not dissimilar in these respects." Trenton Iron Co. v. Yard, 42 N. J. Law, 357; State v. Burrough of Somers Point, 52 N. J. Law, 32 18 Atl. 695, 6 L. R. A. 57; Lastro v. State, 3 Tex. App. 363; Terr. v. Cutinola, 4 N. M. 160, 14 Pac. 809.

We are not unmindful of the expression contained in Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 Pac. 333, on page 335:

"But the overwhelming weight of decided cases is that the final determination of

whether a general law can be made applicable is for the Legislature, and that the decision of the Legislature upon such question is conclusive upon the court. * * * There is not an entire absence of authority holding the contrary to this rule, and strong reasons have been given to support same. That the majority rule in its application has not proven satisfactory in many instances is a matter of legislative history; and many states have sought to limit further the powers of the Legislature in relation to local and special legislation by inserting in more recent Constitutions provisions prohibiting such legislation upon specific subjects."

Special laws are not all local, but all local laws are special. This court has not hesitated to determine that a judicial question is presented when confronted with a local law based upon an arbitrary census calculation. How, then, can it with reason be said that we should adhere to a view that the question of whether or not a general law can be made applicable to the subject is exclusively confined to the Legislature, as a legislative, and not a judicial question? It cannot. The question is a legislative question pending passage of the act. The applicability of a general law is then a question for the Legislature to determine, "and such a statute will not be declared unconstitutional except where it clearly appears that the Legislature was mistaken in its belief that a general law could not be made applicable." 6 R. C. L. 418, par. 413; Richman v. Musctine Co., 77 Iowa, 513, 42 N. W. 422, 14 A. S. R. 308, 4 L. R. A. 445.

In Leatherrock v. Lawter, 45 Okla. 718, 147 Pac. 325, this court said:

"The question as to whether an act creating a superior court for one county, or an act abolishing such a court is general or local and special, is now presented squarely to the court for determination."

Why should the court have bothered to determine whether an act was general or special, if the determination was solely a legislative question, upon which the presumed determination by the act of the Legislature was conclusive upon the judiciary? The answer is that the interpretation of all laws presents judicial questions, not exclusive legislative questions. Presumptions will be indulged in favor of the constitutionality of every act of the Legislature, but whether or not a general law could have been made applicable, in the final analysis, presents a judicial question. Indeed, the act that a general law was theretofore applicable and in effect providing for the making of all items of the estimate for such

municipal corporations by the municipal corporation itself, is at least persuasive as to whether a general law was applicable.

In the Leatherock v. Lawter Case, supra, the question as to whether the act was general or special was presented squarely to the court for determination, and the act was determined to be general, but surely it might have been determined by judicial decision to be special. The point is that the legislative determination was not there considered conclusive upon the judiciary. A judicial determination was required. The rule there applied in the judicial determination was:

"If the act in question is general, and is uniform in its operation, which is the true test of the character of the act, * * * the act should be upheld."

The converse of the rule should be true. If the act in question is special and is not uniform in its operation, which is the true test of the character of the act, the act should fall. Bishop v. Tulsa, 21 Okla. Cr. 457, 209 Pac. 228.

In Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24, quoting from Burks v. Walker, 25 Okla. 353, 109 Pac. 544, it was said:

"But where a statute operates upon a class, the classification must not be capricious or arbitrary, and must be reasonable and pertain to some peculiarity in the subject-matter calling for legislation."

There the act considered was held to be local and special legislation, and so invalid. There it was held that the Legislature had determined the applicability of a general law, consequently the character of the legislation that should be passed was not for inquiry of the courts, but the question of whether the legislation enacted complied with the constitutional requirements was a question for the courts. There it was held the law was special because local, and by reason of the lack of compliance with section 32, art. 5, Constitution, relative to advertising, the act was void.

We hold the utility of a special law, in place of a general law that could have been made applicable, presents, in the final analysis, a judicial question.

In Levine v. Allen, 96 Okla. 252, 221 Pac. 771, an act was held not to be special and local, but general; but it was pointed out that the courts uniformly hold that the "Legislature has not the power to pass a law which is intended to affect some of the justices of the peace, but not all of them," citing cases. How, then, can it be said the

Legislature can provide for a board outside of a municipal corporation and not "thereof" to make one item of an estimate and permit all other items of the levy to be subject to the discretion of the proper officers within the municipal corporation? The act is not local, but it is special. A general law could have been made applicable, and in fact was then applicable. Some modification of the general law as a whole may have been made, but the stripping out of a part of the subject-matter, under an unnatural classification as to items, was in violation of the Constitution.

The statute is special—it concerns one item which by it in certain instances is to be levied by the excise board, whereas all other items are to be made by the school district board, after and in view of the authorization of the annual meeting.

By the statute the Legislature assumed to impose a tax for the purpose of a municipal corporation. The statute does not approach the dignity of a general law, and even though it be considered such, the "power to assess" is not conferred upon "the proper authorities," for it cannot be maintained that the excise board has power to assess in the first instance, but only power to adjust and approve. The excise board is not "thereof," within the meaning of article 10, sec. 20, supra, with reference to municipal corporations, which, in this instance, is the school district.

The excise board has no authority to arbitrarily create an item in the estimate of a school district for transfer fees as provided by section 10607, supra, and that act of the Legislature in its mandatory features is contrary to the constitutional provisions enumerated, and so void. The act will continue to stand as the law in so far as it provides and grants discretionary power to a school district board to provide for transfer fee to be made in its estimate. The making of the transfer and the attendance of the pupil at the appellee school alone does not raise a liability against the appellant.

The cause is reversed, with directions to dismiss the petition of plaintiff below.

BRANSON, C. J., MASON, V. C. J., and HARRISON, LESTER, HUNT, and HEFNER, JJ., concur.

Note.—See "Constitutional Law," 12 C. J. §389, p. 887, n. 37; "Schools and School Districts," 35 Cyc. p. 974, n. 10; p. 1000, n. 83; p. 1015, n. 17; "Statutes," 36 Cyc. p. 986 n. 71; p. 988, n. 74; p. 991, n. 88; p. 1010 n. 50.